IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ROBERT E. WILLIAMS,<br><br>**Plaintiff,**<br><br>v.<br><br>LACY GILLENWATER,<br><br>**Defendant.** | Case No. 22-cv-977-NJR |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Plaintiff Robert E. Williams filed this suit in May 2022 pursuant to 42 U.S.C. § 1983 alleging that he was subjected to unconstitutional conditions of confinement as a pretrial detainee at the Marion County Jail. (Doc. 1). The only remaining defendant—Officer Lacy Gillenwater—has moved for summary judgment. (Doc. 94). Williams filed a response to Gillenwater's motion (Doc. 102), and she filed a reply (Doc. 103). For the following reasons, the Motion is granted.

FACTUAL BACKGROUND

Williams was detained at the Marion County Jail when, on April 6, 2022, Officer Gillenwater and other officers responded to an altercation between Williams and another inmate in D-Block. (*See* Docs. 1, 10). Williams suffered lacerations on his face and was sent to the hospital, where he received multiple stitches near his eyes. (Doc. 10 p. 2; Doc. 95-1, pp. 29-30). When he returned to the jail from the hospital, he was placed in Cell B-1. (*Id.* at p. 31). It is undisputed that Gillenwater did not put Williams in Cell B-1. (*Id.*

at p. 33). Williams immediately complained that the cell was filthy, and the officer who placed him in the cell brought him a mop, a bucket, a broom, and some mop water and paper towels. (*Id.* at pp. 33-34).

Williams continued to complain about the conditions in his cell, including that the toilet was smeared with feces. (*Id.* at pp. 33-36). His repeated complaints over the cleanliness of his cell were answered with responses that stated he was provided with cleaning supplies. (Doc. 95-2, pp. 32-34). Williams also complained that the toilet did not work because correctional officers in the control room had turned the toilet off. (Doc. 95-1 at p. 43). Williams admitted, however, that he did not know if Gillenwater controlled the toilet. (*Id.* at pp. 45-46). Gillenwater attested that she had no knowledge of the toilet in cell B1 not flushing, and she had no control over the water supply or plumbing at the jail. (Doc. 95-3 at ¶ 22). Troy Reed, Jail Administrator, attested that Gillenwater worked part time in April 2022, and part-time officers did not work in control. (Doc. 95-4 at ¶ 20). Moreover, Gillenwater was not in the control room from April 6 to 9, 2022. (*Id.* at ¶ 21).

On April 8, 2022, Jail Administrator Reed and Sergeant Clayton Carter directed Gillenwater to Cell B-1 to assist Williams in removing trash from his cell. (Doc. 95-3, ¶ 14; Doc. 95-4, ¶ 11). Williams told Gillenwater to pick up trash under his bed and desk, including paper and Styrofoam food containers. (Doc. 95-3 at ¶ 16). Gillenwater did not see, and Williams did not complain of, feces in the cell. (*Id.* at ¶ 17). Gillenwater called Williams a "crybaby," and Williams told Gillenwater "You know what, you can just leave out this cell. You know, I'm not gonna deal with this. I have an injury and you call a 42-

year-old man a 'crybaby.'" (Doc. 95-1, p. 38). Gillenwater left the cell and had no other contact with Williams during his detention at the jail. (Doc. 95-3, ¶ 23).

After screening the complaint pursuant to 28 U.S.C. § 1915A, Williams was allowed to proceed on a single claim:

> **Count 1:** Defendants subjected Plaintiff to unconstitutional conditions of confinement at the Jail by moving him to a filthy cell in B block on or around April 6, 2022, and forcing him to live there with open or newly sutured wounds.

(Doc. 10). As mentioned above, Gillenwater is the only defendant remaining in the case.

## LEGAL STANDARDS

Summary judgment is appropriate where there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In determining whether a genuine issue of fact exists, the Court views the evidence and draws all reasonable inferences in favor of the non-moving party. *Ziccarelli v. Dart*, 35 F.4th 1079, 1083 (7th Cir. 2022). Once the moving party sets forth the basis for summary judgment, the burden shifts to the nonmoving party who must go beyond mere allegations and offer specific facts showing that there is a genuine issue of fact for trial. FED. R. CIV. P. 56(e); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). A moving party is entitled to judgment as a matter of law where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex*, 477 U.S. at 323.

## DISCUSSION

Gillenwater asserts that she is entitled to summary judgment because the

conditions Williams was subjected to were not objectively, sufficiently serious and, even if they were, Williams cannot establish that she knew about the conditions and acted "purposefully," "knowingly," or with "reckless disregard." *Miranda v. County of Lake*, 900 F.3d 335, 353 (7th Cir. 2018).

A pretrial detainee's claim for unconstitutional conditions of confinement is governed by the Fourteenth Amendment's Due Process Clause. *Hardeman v. Curran*, 933 F.3d 816 (7th Cir. 2019). An "objectively unreasonable" standard applies. *Id.* at 823. To prevail on a claim alleging unconstitutional conditions of pretrial confinement, a detainee must prove three elements: (1) the conditions in question were "objectively serious"; (2) the defendant acted purposefully, knowingly, or recklessly with respect to the consequences of her actions; and (3) the defendant's actions "were objectively unreasonable—that is, 'not rationally related to a legitimate governmental objective or ... excessive in relation to that purpose.'" *Hardeman*, 933 F.3d at 827 (Sykes, J., concurring) (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 398 (2015)).

Although "the Constitution does not mandate comfortable prisons," it does mandate humane ones. *Thomas v. Blackard*, 2 F.4th 716, 719 (7th Cir. 2021) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)); *see also Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The Seventh Circuit has explained that prison officials must "provide inmates with reasonably adequate ventilation, sanitation, bedding, hygienic materials, and utilities." *Id.* at 720 (quoting *Hardeman v. Curran*, 933 F.3d 816, 820 (7th Cir. 2019)). Conditions of confinement that are minor or transient, such as a "single clogged toilet," are insufficient

Page **4** of **7**

to sustain a claim for a Fourteenth Amendment violation. *Hardeman,* 933 F.3d at 823. "But on the other end of the spectrum, a defendant cannot purposefully deny water until a prisoner is on the brink of death or force a prisoner permanently to live surrounded by her own excrement and that of others." *Id.* at 823-24. The unreasonableness of a detainee's conditions of confinement depends on the severity and duration of his exposure to the conditions. *Id.* at 824. The Fourteenth Amendment is not violated "when the hygienic conditions in a prison do not meet the prisoner's personal standards of cleanliness." *Harris v. Cnty. of Cook*, No. 19-CV-4598, 2024 WL 1702678, at *9 (N.D. Ill. Apr. 19, 2024), *appeal dismissed*, No. 24-1878, 2024 WL 4802267 (7th Cir. July 18, 2024).

In this case, although Williams testified that there was feces on his toilet, he admitted that he was immediately provided with cleaning supplies including a mop, bucket, mop water, broom, and paper towels for him to clean his cell. "Courts frequently hold that a conditions-of-confinement claim about inadequate sanitation cannot survive when the inmate has an ability to clean." *Id.* (collecting cases); *see also Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016) ("[W]e have recognized Eighth Amendment violations where prisoners are deprived of cleaning supplies and running water only in extreme circumstances."); *Budd v. Motley*, 711 F.3d 840, 843 (7th Cir. 2013) ("Budd's allegations of unhygienic conditions, when combined with the jail's failure to provide detainees with a way to clean for themselves with running water or other supplies, state a claim for relief); *Vinning-El v. Long*, 482 F.3d 923, 924 (7th Cir. 2007) (reversing summary judgment where prisoner was held for six days without sanitation items in cell contaminated with human

waste and in which sink and toilet did not work); *Johnson v. Pelker*, 891 F.2d 136, 139–40 (7th Cir. 1989) (reversing summary judgment where prisoner was denied cleaning supplies and confined for three days to cell that was smeared with human waste and lacked running water). Because Williams was provided with supplies to clean his cell, his claim fails.

Moreover, there is no evidence that Gillenwater was personally involved in any of Williams's alleged conditions of confinement. To recover damages under § 1983, a plaintiff must establish that a defendant was personally responsible for the alleged violation of a right. *Whitfield v. Spiller*, 76 F.4th 698, 706 (7th Cir. 2023). It is undisputed that Gillenwater did not put Williams in Cell B-1. When Gillenwater entered the cell on April 8, 2022, Williams told her to pick up trash under his bed and desk, but Gillenwater did not see any feces. Nor did Williams tell Gillenwater about any feces, as he told her to leave the cell after she called him a "crybaby."

Regarding Williams's claim that the toilet in his cell did not work for a couple of days due to the water being turned off, Williams admitted he did not know if Gillenwater turned the toilet off. Gillenwater attested that she was unaware the toilet in cell B1 was not flushing. And the Jail Administrator attested that Gillenwater did not work in the control room, nor was she in the control room from April 6 to April 9, 2022. Thus, there is no evidence that Gillenwater had any personal responsibility for Williams's toilet not working for a couple of days.

Because Williams was provided with cleaning supplies for his cell, and because

there is no evidence that Gillenwater had any personal involvement in the alleged violation of Williams's Fourteenth Amendment constitutional rights, the Court finds that she is entitled to summary judgment.

## CONCLUSION

For these reason, the Court **GRANTS** Gillenwater's motion for Summary Judgment (Doc. 94) and **DIRECTS** the Clerk of Court to enter judgment in Gillenwater's favor and close this case.

**IT IS SO ORDERED.**

DATED:   September 4, 2025

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**